EDWIN BETTS, RESPONDENT, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY, APPELLANT.

Submitted March 26, 1917—Decided June 18, 1917.

1. The terms of a policy of insurance, made between the insurance company and a dentist, to protect the dentist "against loss from the liability by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any alleged error, or mistake or malpractice occurring in the practice of the assured's profession as described in the application" and "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person in consequence of any

alleged error or mistake or malpractice, by any assistant of the assured while acting under the assured's instructions" contained, among others, the provision that the company shall not be liable under the policy for any claim against the assured or any assistant arising from the violation of any law or ordinance on the part of the assured. *Held,* that the insurance company was not liable, under the policy of insurance, to the assured, for damages recovered against him for the malpractice of an assistant, who was held out, by the assured, to the public and to the insurance company, as a licensed dentist, whereas, in fact, the assistant was, to the knowledge of the assured, not licensed to practice and was acting in direct violation of the laws of the state covering the practice and licensing of dentists.

2. *Held, also,* that under the terms of the policy, in order for the assured to recover, it must appear that the error, mistake or malpractice of the assistant occurred while acting under the assured's instruction.

3. Upon grounds of public policy, one who actively or passively participates in violating a statute, cannot recover damages for a loss occasioned by such violation; following and applying the doctrine enunciated in *Hetzel* v. *Wasson Piston Ring Co.,* 89 *N. J. L.* 205.

On appeal to the Supreme Court.

For the appellant, *Kalisch & Kalisch* (*Isidor Kalisch* on the brief).

For the respondent, *Joseph Steiner.*

The opinion of the court was delivered by

KALISCH, J. This case is a sequel to *Klitch* v. *Betts,* decided by us at the June term, 1916, and reported in 89 *N. J. L.* 348. There it appears that the respondent herein, a licensed dentist, was sued for malpractice by one Klitch for injuries inflicted upon his jaw by one Snively, an assistant to the respondent, while in the performance of a dental operation. It further appears that Dr. Betts, the defendant in that case and the respondent herein, endeavored to defend upon the ground that his assistant, Snively, had done an unauthorized and illegal act in operating on Klitch's jaw in the absence of and not under the supervision of the respondent, Snively not being licensed to practice dentistry in this state.

We held that Dr. Betts had so arranged the conduct of his business office as to hold out Snively as his lawful assistant, and, therefore, was answerable for the assistant's negligence to Klitch, and upon that ground we sustained the judgment obtained against Betts.

Dr. Betts, having paid the judgment, brought an action against the appellant insurance company to recover the amount so paid, basing his action on a policy of insurance issued to him by the appellant company whereby the company had agreed to protect him, as a licensed dentist practicing in this state, against loss from liability to any person or persons upon certain terms and conditions to be later herein set forth and considered.

The case was tried at the Essex Circuit, and by stipulation the record and testimony in the case of *Klitch* v. *Betts, supra,* together with the record of this court in that case, were put in evidence, with some slight additional testimony.

Upon these records and testimony Betts recovered a judgment against the insurance company, from which it has appealed.

The argument addressed to us, by counsel for appellant, for a reversal of the judgment, is that the respondent was not entitled to recover a judgment against the appellant because, by the uncontroverted testimony in the case, it appears that the negligent act of Snively, for which the respondent was held answerable in damages, was not covered by the contract of indemnity, in that Snively was not a licensed and registered dentist, and, therefore, under the law of this state was not only not authorized to perform a dental operation but was expressly forbidden to do so, the statute making it a misdemeanor, and that by the terms of the policy it was expressly agreed that the company should not be liable under the policy for any claim against the assured or any assistant arising from the violation of any law or ordinance on the part of the assured or any assistant; that the malpractice or error in the dental operation performed by Snively was not done while acting under the assured's instruction, which is one of the requirements of the policy as a basis of the right of the

assured to indemnity; that the respondent knew that Snively was not licensed and registered to practice dentistry in this state, and, nevertheless, was employed and held out by respondent as his assistant in performing dental operations, which was in express violation of the Dentistry act, which statute makes such conduct a misdemeanor, and, therefore, the respondent does not come into court with clean hands and should not be permitted to make his unlawful act the basis of a right to recover; that in the application for the policy of insurance the respondent stated that he employed no physician, surgeon or dentist regularly on a salary or commission except Dr. Charles L. Snively, and thereby he falsely represented that Snively was a licensed and registered dentist of this state, and that being so, he subjected the insurer to a risk which was not contemplated by it and which was concealed from the insurer, and, therefore, the contract of insurance became void; and lastly, that no notice was given by respondent to the company of any claim made by Klitch upon him within the time required by the terms of the policy.

Turning to the policy of insurance we find that by its terms the insurance company agreed to protect the respondent (1) "against loss from the liability by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any alleged error, or mistake or malpractice occurring in the practice of the assured's profession as described in the application for this policy;" (2) "against loss from the liability imposed by law upon the assured for damages on account of bodily injuries or death suffered by any person or persons in consequence of any alleged error or mistake or malpractice, by any *assistant* of the assured while *acting* under the assured's instructions."

This undertaking of the insurer is made by the policy, subject to certain conditions contained therein, but for the purpose of this case, it will suffice to set forth conditions B and C. Condition "B" provides that the company shall not be liable under the policy for any claim against the assured or any assistant arising from the violation of any law or ordinance on the part of the assured. Condition "C" provides

that the assured shall give immediate written notice of any charge of error or mistake or malpractice, and of any claim for damages covered by this policy to the home office of the company or its authorized agent.

The respective rights of the litigants in this controversy must be determined by the contract of insurance.

The language of the contract is neither technical nor ambiguous, and, therefore, no difficulty can interpose itself to prevent applying the well-recognized canon of construction, by giving the language employed its legal, natural and ordinary meaning.

This court, in *Bennett* v. *Van Riper*, 47 *N. J. Eq.* 563 (on *p.* 566), speaking through Mr. Justice Scudder, said: "Where there is no fixed legal or technical meaning which the court must follow in the construction of a contract, then 'the best construction,' says Chief Justice Gibson, is that which is made by viewing the subject-matter of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention."

Therefore, upon the threshold of the present inquiry into what the legal obligations and rights, flowing from the agreement between insurer and insured, were, and are, we must first pay due regard to the fact that state legislation, for the protection of the public against charlatanism and imposition, has put the practice of dentistry under statutory control. Section 1 of the act relating to dentistry (*Comp. Stat.*, *p.* 1911) provides that only persons who are now duly licensed and registered, pursuant to law, and those who may hereafter be duly licensed and registered as dentists, pursuant to the provisions of this act, shall be deemed licensed to practice dentistry in this state.

The eighth section of the act provides, *inter alia*, that the act shall not be construed to prohibit an unlicensed person from performing mechanical work upon inert matter in a dental office or laboratory or to prohibit a registered student of a licensed dentist from assisting his preceptor in dental

operations while in his presence and under his direct and immediate personal supervision.

This section further provides that a person shall be regarded as practicing dentistry within the meaning of the act who shall use the words "doctor of dental surgery," "doctor of dental medicine," or the letters "D.D.S." or "D.M.D," in connection with his name, or any other title intended to imply or designate him, &c., as a practitioner in all its branches.

Section 12 of the act provides that any person, company or association practicing or holding himself or itself out to the public as practicing dentistry, not being at the time of said practice or holding out legally licensed to practice such in this state, shall be guilty of a misdemeanor.

This being the established law regarding the practice of dentistry in this state at the time the parties to the contract entered into it, they will be held to have done so with full knowledge of the legal effect of their contractual act.

The appellant was entitled to rely on the safeguards which the law erected against improper and illegal practice of dentistry which tends to lead to error, mistake or malpractice.

The record in *Klitch* v. *Betts, supra,* establishes that the uncontroverted fact that Snively, both unlicensed and unregistered to practice dentistry. did, as an assistant to Dr. Betts, a licensed dentist, in the dental office, and, in the absence of Dr. Betts, perform several dental operations upon Klitch and treated the latter's injured jaw resulting from such operations. These acts were clearly in express violation of the statute which forbids dental operations by an unlicensed person. The record also clearly shows that Betts employed and permitted Snively to perform dental operations while he was an unlicensed person, which was a clear violation of the policy.

Snively's acts, being both unlawful and unauthorized, and not having occurred while acting under the assured's instruction, by force of the provision of the insurance contract which limits the liability of the insurance company to injuries or death in consequence of any alleged error or mistake or malpractice, by an assistant of the assured while acting under the

assured's instruction, cannot, therefore, operate to create any liability on part of the insurance company to indemnify the respondent.

Besides this conclusive bar to the respondent's right to a recovery, condition "B" of the policy of insurance expressly provides that the insurance company shall not be liable under the policy for any claim against the assured or any assistant arising from the violation of any law or ordinance on part of the assured.

The insurer is entitled to the protection which this clause affords it. It is of the very essence of the contract. · It is difficult to perceive in what reasonable way the insurance company could have protected itself against claims arising out of illegal act or acts by unauthorized persons than the one agreed upon between the parties to the contract, by limiting the liability of the company to claims arising out of mistakes, error or malpractice against a dentist or his assistant in the lawful practice of dentistry.

The fact that the assistant was a dentist of another state does not make it the less a substantial violation of the law of this state and his act an unauthorized one. In the legal aspect his act stands upon the same level as if it had been performed by a butcher or a blacksmith, or any other unqualified person.

It is suggested that condition "B" has only reference to where the violation of the law is the proximate cause of the injury. We must bear in mind that we are dealing with liability arising out of contractual relations and not with liability arising out of a tort.

There is no legal obstacle in the way to parties agreeing, as in this case, what shall or shall not be the basis of liability. If they fix remote causes as a basis, it is not for us to say that they intended to fix proximate. In the present case, however, it might be properly said that the violation of law, in that the unauthorized act of an unlicensed dentist in this state caused the malpractice, was in a certain sense the proximate cause.

The record in *Klitch* v. *Betts, supra,* establishes that injuries from which Klitch suffered were inflicted upon him by Snively, the respondent's assistant, in a dental operation. Before a person can lawfully practice dentistry in this state, he must submit himself to both a written and oral examination by the state board of registration and examination in dentistry, and if the board finds the applicant qualified to practice dentistry and of good moral character, he will be entitled to a license and be registered. Snively had never submitted himself to any such test as to his qualifications in order to obtain a license, and, therefore, in the eye of the law, his status was that of a person not qualified to practice dentistry. It was the direct result of Snively's unlawful act, coupled with his want of ordinary skill that caused the injury. It would not be reasonable to hold the insurer liable for the malpractice of an assistant whose act was, to the knowledge of Betts, contrary to law.

We think also that the respondent is debarred from recovering on the policy, because it appears that the basis of his claim of recovery is the unlawful act of Snively in which the respondent participated, by holding Snively out as a licensed dentist to the public and to the appellant.

It is to be observed that in the contract of insurance the respondent makes and warrants the truth of the statements made by him in applying for the insurance. He made this statement: "I employ no physician, surgeon or dentist regularly or on a salary or commission except as follows.: Dr. Charles L. Snively." It has already been pointed out that a person shall be regarded as practicing dentistry within the meaning of the Dentistry act who shall use a title, &c. Therefore, when the respondent made the statement and gave the title "Dr." to Snively, knowing that Snively was not entitled thereto, under the law of this state, he made an untruthful statement.

It is manifest that the truthfulness of this statement was highly important to the insurer. For it determined one of the risks that the insurer was to insure against. It was one of the risks to be covered by the policy of insurance and, there-

fore, it was essential that the statement in relation thereto should be true.

We need not spend time to demonstrate that the risk of mistake, error, &c., is greater in the case of one who is not legally qualified to practice dentistry than in the case of one who is.

The legislature has declared what the qualification to practice dentistry shall be, and, in the absence of a license to practice dentistry, there will be an absence of presumption of qualification. It is, therefore, apparent that the object of requiring a statement as to the status of the person or persons is to apprise the insurance company of the risk which it was insuring against.

Upon the question whether the insured will be permitted to recover on his contract where he has sustained a loss, which loss arose through the act of an assistant in violating the law, related to the subject-matter of the contract, the lawful practice of dentistry, and in which violation the insured either actively or passively participated, we are unable to distinguish, on grounds of public policy, the present case from the case of *Hetzel* v. *Wasson Piston Ring Co.,* recently decided by this court, and reported in 89 *N. J. L.* 205.

In that case it was held that the father disentitled himself of his right of action to recover for loss of the services of his son, who was injured while in the employ of the company, because it appeared that the son was under fourteen years of age, and hence was employed in violation of a statute which imposed a penalty of $50 on any corporation, firm, individual, parent or custodian who permitted such employment. Chief Justice Gummere, speaking for this court (on *p.* 308), says: "The injury to the plaintiff's son is the direct result of the joint violation of the act of 1904, by the defendant and the plaintiff, and the stripping of the child of that protection which the legislature by that statute declared he should have.

"The plaintiff can take nothing by way of compensation for a loss which has come to him as the direct result of his own violation of law."

In the present case, the insurance company is a wholly innocent party, which was not the fact as to the company in the case just referred to, and, therefore, there is a stronger reason for denying the respondent's right to a recovery.

Furthermore, it is to be observed that the statement made by the respondent in his application for insurance, that Dr. Snively was his assistant, was a material statement, since it related to the risk which the company was taking, and, besides, the respondent warranted the statement to be true when he knew that Snively was not authorized to practice dentistry in this state. This of itself is sufficient to avoid the appellant's liability on the policy.

Having reached the result that the trial judge erred in not directing a verdict for the appellant, we find it unnecessary to consider the other matters assigned as grounds of appeal.

The judgment will be reversed.

*For affirmance*—SWAYZE, PARKER, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, JJ. 6.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, BERGEN, MINTURN, KALISCH, TAYLOR, GARDNER, JJ. 9.